IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| COBALT COAL LTD. )<br>               Plaintiff    )<br>                             )<br>v.                           )<br>                             )<br>G.E.M. HOLDINGS U.S. CORPORATION )<br>Serve:  Delaware Incorporating Agents    )<br>3524 Silverside Road, Suite 35B         )<br>Wilmington, DE  19810-4929           )<br>               Defendant   ) | Case No. |

## **COMPLAINT**

Now comes the plaintiff, Cobalt Coal Ltd., by counsel, and for its Complaint against defendant, G.E.M. Holdings U.S. Corporation, states as follows:

### **Parties and Jurisdiction**

1. Plaintiff Cobalt Coal Ltd. ("**Cobalt**") is a limited company incorporated and registered in the province of Alberta, Canada.

2. Upon information and belief, defendant G.E.M. Holdings U.S. Corporation ("**GEM**") is a Delaware corporation.

3. This suit involves a Share Purchase Agreement entered into between Cobalt as Seller ("**Seller**"), together with its senior secured lender and its subordinated secured lender as consenting parties, relating to the sale of the shares of Clinchco Met

1

Coal, Inc., a West Virginia corporation, doing business in Dickenson County Virginia in the Western District of Virginia, to US Carbon Resolutions Corporation which was subsequently assigned by US Carbon Resolutions Corporation to GEM.

4. Jurisdiction is based on diversity of citizenship and the amount in controversy exceeds $75,000.00.

## Allegations

5. Pursuant to a Share Purchase Agreement dated August 24, 2015 and effective September 1, 2015 (the "**SPA**"), U.S. Carbon Resolutions Corporation ("**USCR**") agreed to purchase from Cobalt 90% of the issued common shares (being 90 common shares) (the "**Stock**"), of Clinchco Met Coal, Inc. ("**Clinchco**") for the sum of $25,850,000.00.  The said SPA was closed on December 7, 2015 (the "**Closing**") and the Closing is memorialized in a Closing Addendum dated December 7, 2015 (the "**Closing Addendum**"). The Closing Addendum provided USCR additional time to make payments that were to have been made at the Closing.  The SPA and subsequent addendums (as further described below) are referred to herein as the "**Transaction Documents**".

6. A genuine copy of the SPA is attached hereto as Exhibit "A".  A genuine copy of the Closing Addendum is attached hereto as Exhibit "B".

7. Including the amendments included in the Closing Addendum, the said SPA was amended 4 times. The second amendment was by an agreement entitled "Second Addendum" that should be dated March 3, 2016 but was mistakenly dated March 3, 2015 (the "**Second Addendum**"). The mistaken date contained in the Second Addendum was corrected in the Novation and Amending Agreement which is further described below.

8. A genuine copy of the Second Addendum is attached hereto as Exhibit "C".

9. The Second Addendum was required as a result of defaults by USCR to make the payments required to be made pursuant to the SPA and the Closing Addendum. The Second Addendum provided USCR additional time to make the "Initial Consideration" payment and the "8 Monthly Payments" that are more fully described below.

10. On August 31, 2016 USCR assigned its rights and interest in the SPA to the defendant GEM by the document entitled "Novation and Amending Agreement" dated August 31, 2016 (the "**Novation and Amending Agreement**").

11. A genuine copy of the Novation and Amending Agreement is attached hereto as Exhibit "D".

12. The Novation and Amending Agreement was required as a result of further defaults by USCR for failure to make the payments required under the SPA (as amended). The terms of the said Novation and Amending Agreement included provisions that the Seller agreed to transfer to GEM the remaining 10 percent of the common shares of Clinchco Met Coal, Inc. (being an additional 10 common shares) upon fulfillment by GEM of its obligation to pay the full Consideration (as that term is defined in the SPA, as amended). The Novation and Amending Agreement further extended the deadline for making the 8 Monthly Payments (as that term is defined in the Transaction Documents) due under the SPA (as amended) to be as follows:

(a) $100,000.00 due September 30, 2016

(b) $100,000.00 due October 30, 2016

(c) $100,000.00 due November 30, 2016

(d) $100,000.00 due December 30, 2016

(e) $100,000.00 due January 30, 2017

(f) $100,000.00 due February 30, 2017

(g) $150,000.00 due March 31, 2017

Additionally, the Novation and Amending Agreement confirmed that a payment in the amount of $50,000.00 made on behalf of USCR on May 31, 2016 would be deemed to be payment of the Initial Consideration. Additionally, the Novation and Amending

4

Agreement confirmed that the total aggregate consideration for the Stock was reduced from $25,850,000.00 to $25,000,000.00 (being the "**Total Consideration**").

13. The parties amended the SPA a final time by an agreement entitled "Waiver and Third Addendum to the Share Purchase Agreement" dated March 29, 2017 (the "**Waiver and Third Addendum**").

14. A genuine copy of the Waiver and Third Addendum is attached hereto as Exhibit "E".

15. The Waiver and Third Addendum was required as a result of yet further defaults of the Buyer relating to failure to make the payments required under the SPA (as amended).

16. Pursuant to the terms of the said Waiver and Third Addendum, the parties agreed to amend the due dates for the remaining "8 Monthly Payments" as follows:

    (a)    $100,000.00 due April 15, 2017

    (b)    $100,000.00 due May 15, 2017

    (c)    $100,000.00 due June 15, 2017

    (d)    $100,000.00 due July 15, 2017

    (e)    $100,000.00 due August 15, 2017

    (f)    $50,000.00 due September 15, 2017

In addition to extending the deadlines for making the balance of the 8 Monthly Payments, the requirement to make additional monthly payments of $50,000.00 ("**Additional Payments**") was added which Additional Payments were due to be made after all of the 8 Monthly Payments had been made such that the Additional Payments were to begin on October 15, 2017 and end on November 15, 2018 (each payment due to be made, whether as one of the "8 Monthly Payments" or as one of the "Additional Payments" described above shall hereinafter be referred to as a "**Monthly Payment**") after which annual payments would be due.  The deadlines for making annual payments (each, an "**Annual Payment**") in the amount of either 2.5 Million Dollars or 5 Million Dollars (which amount is dependent on the previous years' clean coal production quantity) were amended such that the due date for the first Annual Payment would be delayed from September 1, 2017 to December 1, 2018 and Annual Payments were to continue thereafter annually until the Total Consideration is fully paid.

17. As of the date of this Complaint, the balance of the Total Consideration is $24,500,000.

18. As of the date of this Complaint, GEM is in default of the Transaction Documents as follows:

>   (i) GEM has failed to make the June 15, 2017 Monthly Payment in the amount of $100,000; and

(ii) GEM has failed to make the July 15, 2017 Monthly Payment in the amount of $100,000; and

(iii) GEM has failed to make the August 15, 2017 Monthly Payment in the amount of $100,000; and

(iv) GEM has failed to make the September 15, 2017 Monthly Payment in the amount of $50,000; and

(v) GEM has failed to make monthly minimum royalty payments to the holders of the overriding royalty (the "**ORR Owners**") payable pursuant to the Amended and Superseding Overriding Royalty Agreement dated May 1, 2014 (the "**ORR Agreement**") which ORR Agreement is an obligation of a subsidiary of Clinchco and which delinquent payments now total approximately $231,000; and

(vi) GEM has failed to make payments to the engineering firm that is conducting an acreage extension amendment together with failing to make payment to the water monitoring firm charged with doing regular water monitoring and has failed to make payment to the company charged with doing "benthic surveys", all of which are relate to the permits ("**Permits**") held by a subsidiary of Clinchco (the "**Permits**"), which delinquent payments are in the approximate cumulative amount of $47,434.00 and are an obligation of a subsidiary of Clinchco. The requirement to do regular water monitoring and benthic surveys is a requirement of the Virginia Department of Mines and Minerals and cannot be ignored; and

(vii) GEM has failed to make payments to its General Manager pursuant to an employment agreement ("**Employment Agreement**") for 25 consecutive months. The Employment Agreement is a contract entered into by a Clinchco subsidiary requiring monthly payments of $7,000 such that the total amount currently owing pursuant to the Employment Agreement is approximately $175,000.00 and which sum constitutes an obligation of that subsidiary of Clinchco.

7

19. GEM has breached the Transaction Documents and is in Default as follows:

    (a)    None of the payments referenced in paragraph 18 (i) thru (iv) of this Complaint have been paid which constitutes four (4) breaches of the payment terms contained in the Transaction Documents; and

    (b)    None of the overriding royalty payments referenced in paragraph 18 (v) of this Complaint have been paid which:

        (i)    creates an encumbrance against a subsidiary of Clinchco which is strictly prohibited in the Transaction Documents; and

        (ii)    places the Leases at risk of cancellation if the ORR Owners elect to proceed with involuntary bankruptcy proceedings.

    (c)    None of the Employment Agreement payments referenced in paragraph 18 (vii) of this Complaint have been paid which creates an encumbrance against a subsidiary of Clinchco which is strictly prohibited in the Transaction Documents; and

    (d)    None of the permit expansion, biological or water monitoring payments referenced in paragraph 18 (vi) of this Complaint have been paid which:

        (i)    creates an encumbrance upon a subsidiary of Clinchco which is strictly prohibited in the Transaction Documents; and

        (ii)    places the Permits at risk of cancellation; and

        (iii)    causes the company to be in violation of the regulations of the Department of Environmental Protection and Virginia Division of Mined Land Reclamation regulatory requirements that require ongoing biological monitoring, preparation and submittal of environmental monitoring reports pursuant to the Permits.

In total, when including 17 missed Employment Agreement payments, the 14 missed ORR Royalty payments, the 4 missed Consideration payments and the 3 missed Permit sustaining payments, the Plaintiff GEM is in default of making 38 payments required to be made so as to be in compliance with the Transaction Documents.

20. Pursuant to paragraph 5(i) of the Waiver and Third Addendum which pertains to Consideration payments: "*if any of the payment obligations contained in the Clinchco Acquisition Agreement (as amended herein) have not been received within 3 clear business days of the due dates set out in the Clinchco Acquisition Agreement (as amended herein) Seller may by written notice to GEM declare a default under the Clinchco Acquisition Agreement (a "**Revised Payment Terms Default**")*".

21. The Seller, by written notice to GEM on July 8, 2017, declared GEM to be default of its obligation to make the June 15, 2017 Payment in the amount of $100,000 (the "**Notice of Default**").

22. The Seller served the Notice of Default in accordance with the requirements of the Transaction Documents.

23. Pursuant to paragraph 5 (i) (ii) of the Waiver and Third Addendum: "*upon the occurrence of a Revised Payment Terms Default which is continuing and has not been remedied or waived within 30 clear business days of GEM's receipt of the notice of a Revised Payment Terms Default, Seller may by written notice to GEM declare that

9

*the transactions contemplated by the Clinchco Acquisition Agreement shall be deemed to be immediately cancelled.*"

24. The Revised Payment Terms Default was not cured within 30 clear Business Days of Seller's July 8, 2017 Notice of Default. The facts are that the Revised Payment Terms Default has not been cured as of the date of this Complaint, nor have any of the 3 other Consideration payment Defaults been rectified nor have any of the other 34 missed payments been made.

25. The Seller provided written notice to GEM on August 24, 2017 that the transactions contemplated by the Clinchco Acquisition Agreement shall be deemed to be immediately cancelled ("**Cancellation Notice**"). The Cancellation Notice was served after the passing of 33 clear Business Day after the Default Notice was served and was therefore served in accordance with the requirements of the Transaction Documents.

26. Pursuant to paragraph 5 (i) ii of the Waiver and Third Addendum: "*within 5 clear Business Days of receipt of Seller's cancellation notice, GEM shall provide confirmation in writing to Seller that it will either (i) in lieu of cancellation pay within 6 months all amounts of the Reduced Purchase Price and the Intercompany Debt that remains outstanding or (ii) immediately cooperate with Seller to cause the transfer of any assets back to Seller.*"

27. GEM did not provide such confirmation in writing to the Seller within 5 clear Business Days of service of the Cancellation Notice.

28. Evidence that GEM received the Notice of Default on July 8, 2017 and the Cancellation Notice on August 24, 2017 are attached as exhibits to this Complaint including genuine copies of the Notice of Default and the Cancellation Notice which are attached hereto as Exhibits "F" and "G" respectively. Exhibits "F" and "G" include therein true copies of the e mails transmitting the Notice of Default and the Cancellation Notice together with copies of the express post receipts whereby the Notice of Default and the Cancellation Notice were sent by express post within a day of transmitting the Notice of Default and the Cancellation Notice via e mail, all as required by the Transaction Documents. Exhibit "G" also includes therein a true copy of the written affidavit of service from Delaware Attorney Services, LLC confirming that hand delivery of the Cancellation Notice was affected on August 24, 2017.

29. On September 1, 2017, Seller received an e mail from Stephen Moscicki of GEM with an undated and unsigned letter attached to the e mail (the **"Moscicki Letter"**) which Moscicki Letter confirmed the following documents:

    (a)    "Demand Notice" dated 7 July 2017; and

    (b)    "Confirmation of Continuing Default" and "additional Notice of Default" dated July 8 2017; and

11

   (c) "Notice of Default" dated 15 July 2017; and

   (d) "Notice of Cancellation" dated 24 August 2017 relating to the Share Purchase Agreement ("the Cancellation Notice")

A true copy of the e mail correspondence received by the Seller on September 1, 2017 together with a true copy of the Moscicki Letter is attached to this Complaint as Exhibit "H".

 30. The Moscicki Letter purported as follows: "*None of the Purported Notices have been given in accordance with the provisions of clause 14.1 of the Share Purchase Agreement which requires notices addressed to the Buyer, namely GEM Holdings US Corporation, to be delivered by post or by hand to 16a Gashouse Lane, High Street, Wetherby, West Yorkshire LS22 6LT United Kingdom. Each of the Purported Notices is therefore invalid.*"

The assertion above is incorrect as the method for service was amended within the Waiver and Third Addendum.

 31. Notwithstanding that the assertion contained in the Moscicki Letter advising that the service address was incorrect, the Seller dispatched a Fed-Ex overnight courier package to the address listed in paragraph 29 immediately above on September 13, 2017. That package contained numerous notices of default pertaining to the defaults more particularly described in paragraphs 18 and 19 of this Complaint together with payment demands being made upon Seller by its senior, secured lender

and its subordinated, secured lender. On September 20, 2017, the Seller received a voice mail from Fed-Ex stating that: "*the recipient has moved with no forwarding information*" and consequently, the package was undeliverable. A true transcript of the voice mail from Fed-Ex is attached to this Complaint as Exhibit "I". A true copy of the Fed-Ex way bill related to the attempted delivery to the Wetherby, England address is attached to this Complaint as Exhibit "J".

32. The Seller has not received either a written or verbal notice of change of address from GEM.

33. Notwithstanding the facts contained in paragraphs 30, 31 and 32 above, the assertion contained in the Moscicki Letter pertaining to the need to serve documents to the Wetherby, England address conflicts with, and is not supported by, the Clinchco Acquisition Agreement.

34. The Moscicki Letter continued on to state: "*we hereby give notice to you pursuant to Article 5 (i)(ii) (i) of the Third Addendum and Waiver dated March 29 2017 that we will, in lieu of cancellation of the Share Purchase Agreement purported to made pursuant to the Cancelation Notice, pay the Remaining Balance as defined in such Article should the Purported Notices prove to be valid.*"

35. The Remaining Balance (as that term is defined in the Transaction Documents) is the sum of $24,500,000 as of the date of this Complaint.

36.     The provisions of clause 5 (i) ii of the Waiver and Third Addendum would have required the Remaining Balance to be paid within 6 months in the event that GEM had exercised its option to do so within the time permitted.

37.     The provisions of Clause 10.7.3.1 and Clause 10.7.3.2 of the Waiver and Third Addendum are reprinted below:

> *10.7.3 Where GEM elects to exercise its right under clause 10.7.1(i) to accelerate the payments due to Seller under the agreement, during the 6 month period provided therein:*
>
> *10.7.3.1 GEM agrees not to permit (without the consent of the Seller not to be unreasonably withheld or delayed) any member of the Clinchco Group to:*
>
>> *10.7.3.1.1 declare or pay any dividends or distributions to shareholders (other than for the purposes for funding the payment to the Seller under clause 10.7.1); or*
>>
>> *10.7.3.1.2 approve the award of any exceptional salary increases or special bonuses to any officer or employee;*
>
> *10.7.3.2 GEM agrees not to make or approve any additional capital expenditures or incur any new obligations or liabilities against any member of the Clinchco Group without the prior written consent of Cobalt, which Cobalt shall not unreasonably withhold provided that the capital expenditure, new obligation or liability pertains to the repair or replacement of equipment required to continue mining operations.*

38.     The Waiver and Third Addendum excerpt reprinted in paragraph 37 above would place restrictions upon GEM in respect of making certain payments or incurring

14

new obligations or liabilities against the Clinchco Group should the requirement to pay the remainder of the Consideration be accelerated to within 6 months.

39. As of the date of this Complaint, the Seller has not been asked to, nor has it, provided written consent to GEM to make any dividend or exceptional salary or bonus payments or to make or approve any additional capital expenditures or incur any new obligations or liabilities against any member of the Clinchco Group as described by, and restricted by, the Waiver and Third Addendum (pursuant to its Articles 10.7.3.1.1 and 10.7.3.1.2 as reprinted in paragraph 37 above).

40. Had GEM properly provided notice that it had elected to accelerate the payment of the balance of the Consideration to be "within 6 months", GEM would be subject to the restrictions described in paragraphs 36 thru 38 of this Complaint.

41. As the Moscicki Letter was not provided within 5 clear Business Days as required, it has not been made in compliance with the said Waiver and Third Addendum and is therefore invalid.

42. On September 7, 2017, the Seller followed up a with a formal confirmation letter to GEM re-confirming that the transactions contemplated by the Clinchco Acquisition Agreement were cancelled in accordance with the August 24, 2017 Termination Notice. A true copy of the letter re-confirming that the transactions contemplated by the Clinchco Acquisition Agreement were cancelled in accordance

with the August 24, 2017 Termination Notice is attached to this Complaint as Exhibit "K".

43.     On September 7, 2017, the Seller received, via registered mail to its Calgary, Alberta offices, a signed but undated letter in the same format as the Moscicki Letter (the "**Signed Letter**").  As the Signed Letter was also not provided within 5 clear Business Days as required, it has not been made in compliance with the said Waiver and Third Addendum and is therefore ineffective.  A true copy of the Signed Letter is attached hereto as Exhibit "L".

44.     Also attached to this Complaint as Exhibit "M" is a letter from the Seller to GEM dated on the same date as this Complaint. In the event there is a finding by the court that the transaction has not been terminated, the letter places GEM on notice of the existence of the restrictions against making extraordinary salary or dividend payments or incurring new obligations or liabilities against the Clinchco Group (the "**Restrictions Advisory Letter**").  The Restrictions Advisory Letter acknowledges GEM's limited right to make "capital expenditures or the creation of a new obligation or liability" that specifically pertains to the repair or replacement of equipment required to continue mining operations.

WHEREFORE, your plaintiff moves this Court to:

1. Determine and Declare that GEM is in default under the terms of the Transaction Documents;

2. Determine and Declare that Notice of Default and the Termination Notice have been properly served on GEM in accordance with the Transaction Documents;

3. Determine and Declare that GEM has not effectively exercised its option to pay the reduced purchase price within 6 months because it did not notify Cobalt of its intention to do so in compliance with the Transaction Documents;

4. Order GEM to transfer to Cobalt any and all assets transferred pursuant to the Clinchco Acquisition Agreement with an effective date of August 24, 2017; and

5. Order that the Resignations of each of the officers and directors of Clinchco and all of the subsidiaries of Clinchco are deemed to have occurred with an effective date of August 24, 2017; and

6. Confirm and Declare that in the event there is a finding by the court that the transaction has not been terminated any capital expenditure, contract or agreement entered into on or after August 24, 2017 that gives rise to a new obligation or liability against any member of the Clinchco Group is deemed null and void unless such capital expenditure, new obligation or liability specifically pertains to the repair or replacement of equipment required to continue mining operations.

7.      Order such other and further relief as may be reasonable or necessary.

                        COBALT COAL, LTD.
                           - by counsel -

s/Dan Bieger, Esq.
Virginia State Bar No. 18456
DAN BIEGER, PLC
565 Volunteer Parkway
Bristol, TN  37620
(423) 573-4440
(423) 573-4443 - Fax
dan@biegerlaw.com
Counsel for Plaintiff