Execution Version

## Novation and Amending Agreement

Made between US Carbon Resolutions Corporation ("**USCR**") , G.E.M. Holdings U.S. Corporation as ("**GEM**" or "**Buyer**") , Cobalt Coal Ltd. ("**Cobalt**" or "**Seller**"), Tailwind Capital Partners, Inc. ("**Tailwind**" and together with USCR, GEM, Cobalt and Tailwind, collectively, the "**Parties**") and Al Kroontje ("**Kroontje**"), in his capacity as the holder of the Kroontje Debenture (as defined).

Made this 31 day of August, 2016.

WHEREAS USCR, Cobalt and Tailwind have entered into the Share Purchase Agreement ("**SPA**") dated August 24, 2015 in relation to the acquisition by USCR from Cobalt of 90% of the issued share capital of Clinchco Metallurgical Coal Incorporated ("**Clinchco**" or "**the Company**");

AND WHEREAS the transactions contemplated by the SPA were closed on December 7, 2015 (effective date September 1, 2015) in Naples, Florida pursuant to the Closing Addendum (the "**Closing Addendum**") executed at closing ("**Closing**");

AND WHEREAS USCR, Cobalt and Tailwind entered into a Second Addendum dated March 3, 2016 (the "**Payment Extension Agreement**") which provided USCR additional time to make the Initial Consideration payment and the 8 Monthly Payments (as those terms are defined in the Second Addendum) (hereinafter the SPA, the Closing Addendum and the Payment Extension Agreement shall be referred to as the "**Transaction Documents**" and are attached to this agreement as Annex A);

AND WHEREAS USCR does not have the financial resources to make any of the payments required by the Transaction Documents and wishes to be released from its liabilities under the Transaction Documents and wishes to assign all of its rights and interests in and to the Transaction Documents to GEM in consideration of GEM assuming USCR's liability to make payments thereunder;

AND WHEREAS GEM does have the financial resources to make the payments required under the Transaction Documents and has deposited the sum of $50,000 (" **the Deposit**") with Cobalt in anticipation of entering into this Agreement (such sum was used to make the first payment due under the Transaction Documents as amended by this Agreement) and is willing to assume the liabilities of USCR to make consideration payments pursuant to the Transaction Documents;

AND WHEREAS Cobalt has agreed to release USCR from its liabilities under the Transaction Documents in consideration of the assumption by GEM of the liability to make consideration payments and has consented to the assignment by USCR to GEM of all of its rights and interests in and to the Transaction Documents;

AND WHEREAS Cobalt has in consideration of the assumption by GEM of the aforementioned liabilities of USCR agreed that upon the receipt by Cobalt of the final payment due to it under the Transaction

Execution Version

Documents it will transfer for no further consideration the remaining 10% of the issued share capital of Clinchco so that following such transfer, GEM will own 100% of the issued share capital of Clinchco free from Encumbrances;

**AND WHEREAS** Cobalt and GEM have agreed that certain amendments are made to the Transaction Documents and Cobalt has agreed to give certain undertakings, confirmations and covenants as set out in this Agreement;

**AND WHEREAS** Tailwind has consented to such release, assumption and assignment and to the amendments to the Transaction Documents effected by this Agreement and has agreed to execute and deliver the original signed Discharges (as defined in the SPA) in relation to the security interests it holds over the assets of Clinchco and its subsidiaries within ten (10) days of the date of this Agreement and the Discharges will be held in Escrow by GEM's counsel until all amounts due under the Cobalt Senior Debt have been repaid;

**AND WHEREAS** Kroontje, an affiliate of Tailwind and the holder of the fixed and floating charge debenture dated September 17, 2013 given by Cobalt to Kroontje to secure loans made to Seller in a maximum amount of $7 million ("**the Kroontje Debenture**"), (i) has consented to the sale of the Clinchco shares pursuant to the Transaction Documents as amended and (ii) has agreed to release the charge over all of the shares of Clinchco created by the Kroontje Debenture; provided that, and only for so long as, the Consideration payments contemplated by the Transaction Documents (as amended by this Agreement) are made in accordance with requirements of the Transaction Documents (as amended by this Agreement);

**AND WHEREAS** capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the SPA.

**NOW THEREFORE THE PARTIES AGREE**, for the consideration of $10.00 and the mutual terms contained herein, as follows:

1. **Novation**

    a. Cobalt hereby:
        i. releases USCR from any and all liabilities under the Transaction Documents, (including for any breach occurring before the date hereof) ("**the Release**"); and
        ii. consents to the assignment to GEM of all of USCR's rights in and to the Transaction Documents subject only to the assumption by GEM of USCR's obligations to pay the Consideration;

    b. GEM hereby assumes and undertakes to Cobalt to perform the liabilities of USCR to pay the Consideration under the Transaction Documents as amended (other than for any breach occurring before the date hereof) ("**the Assumption**");

    c. In consideration of the Assumption, USCR hereby assigns to GEM with full title guarantee and free from any Encumbrances all of USCR's rights in and to the Transaction Documents ("**the Assignment**") and all its rights and title in the Shares, and on demand by GEM USCR hereby agrees to deliver to GEM all documents including any documents of title delivered to it pursuant to the Transaction Documents;

    d. The effective date of the Assignment is 31st day of August 2016 ("**the Effective Date**").

## 2. Consent of Tailwind, Agreement not to enforce the Cobalt Senior Debt and delivery of the Discharges

In consideration of the Assumption, Tailwind hereby:

    a. irrevocably consents to the Assignment and the Release and to the amendments to the Transaction Documents effected by this Agreement;

    b. undertakes not to make (whether pursuant to any guarantee or indemnity or otherwise and whether on the default, dissolution or insolvency of Cobalt or otherwise) any demand on the Company or the Subsidiaries in respect of any indebtedness (including without limitation the Cobalt Senior Debt) owed by Cobalt to Tailwind or to enforce any security (including without limitation any Permitted Encumbrance) it holds over any of the assets of the Company or of the Subsidiaries or over the Shares for so long as GEM is complying with its obligations under the Transaction Documents (as amended from time to time) in respect of the payment of the purchase price for the Shares;

    c. in accordance with Section 8.2.3 of the SPA, affirms its obligations to provide a statement of the principal amount outstanding of the Cobalt Senior Debt (including interest thereon) within 30 days of receipt of each payment thereon and upon request by GEM;

    d. in accordance with Section 8.2.4 of the SPA, shall provide fully executed Discharges within 10 days of the execution of this Agreement, such Discharges to be held in escrow by GEM's counsel, McCarthy Denning Limited, under the trust condition that the Discharges will not be released to GEM or acted upon until no amount is outstanding on the Cobalt Senior Debt; and

    e. repeats to the Buyer and Seller the warranties set out in paragraph 1 of Schedule 4 of the SPA.

Execution Version

3. **Consent of Kroontje to the release of the shares of Clinchco from the Kroontje Debenture**

    a. In accordance with Section 5(d) of the Kroontje Debenture, Kroontje irrevocably consents (in favour of USCR and GEM specifically and only) to the sale of the Shares as set out in the Transaction Documents free of any encumbrance created by the Kroontje Debenture and agrees to execute and deliver to GEM any additional documents requested by GEM that are necessary to give effect to the release of the Shares from the Kroontje Debenture. The Kroontje Debenture will remain in force over any other Specifically Mortgage Property as defined in the Kroontje Debenture as well as over the Consideration payments made by the Buyer (as assigned by this Agreement) to the Seller as contemplated by the Transaction Documents (as amended by this Agreement. The provisions of this section shall terminate upon an event of default having occurred as a result of the Buyer (as assigned by this Agreement) not having made the Consideration payments in the required amounts or not having been made prior to the payment deadline (with time being of the essence) in the Transaction Documents (as amended by this Agreement).

4. **Remaining Shares in Clinchco**

    Cobalt hereby agrees to transfer for no further consideration with full title guarantee and free from any Encumbrances legal and beneficial title to the 10 common stock shares of Clinchco held by it and not already subject to the sale and purchase set out in the Transaction Documents ("**the Remaining Shares**"). Such transfer shall take place as soon as practicable, but in any case, not more than 10 days following payment of the final instalment of the Consideration.

5. **Payment of the Initial Consideration**

    a. GEM hereby agrees to the release to Cobalt of the Deposit as payment of the initial consideration of $50,000 due under the Transaction Documents ("**the Initial Consideration**") and Cobalt hereby waives any breach of the Transaction Documents due to the failure by USCR to pay any part of the Consideration on or before the times provided therefore in the Transaction Documents and any other breach of the Transactions Documents by USCR.

    b. Cobalt hereby agrees that notwithstanding the provisions of clauses 10.3 and 10.4 of the SPA and clause 2 of the Payment Extension Agreement, provided that GEM makes the payments due under the Transaction Documents as varied by this Agreement, GEM will acquire good right and title in the Shares and the transactions contemplated by the Transaction Document shall not be cancelled.

Execution Version

6. **Revision to the Deadline for Making the First of the 8 Monthly Payments and Alteration to Consideration**

   a. The deadline for making the first of the 8 Monthly Payments due under the Transaction Documents shall be changed from June 30, 2016 to August 30, 2016. Furthermore, the payment to be made on August 30, 2016 shall be reduced to $50,000 and the last payment due under paragraph 3 of Schedule 3 of the SPA shall be increased to $150,000 so that the aggregate of the payments under paragraph 3 shall remain $800,000. For sake of clarity, since the $50,000 Deposit has already been received, after the payment of the first installment of $50,000 (payable on August 31, 2016) has been made, 6 monthly payments of $100,000 will be due at the end of each month starting September 30, 2016 and ending on February 28, 2017 followed by one payment of $150,000 due on March 31, 2017 for total "Initial Consideration" of $800,000.

   b. Notwithstanding any other provision of the Transaction Documents it is hereby agreed that the total aggregate Consideration shall be reduced from $25,850,000 to $25,000,000.

7. **Warranties etc. of Cobalt**

   a. Cobalt hereby re-certifies the Warranties contained in the SPA as updated by Section 3 of the Closing Addendum are valid and true as of the date of this Agreement subject to the following exceptions:

      i. Warranty 3.1: (A) on April 30, 2016 Cobalt Coal LLC's registration with the State of Virginia was cancelled for failure to pay the annual fee. The registration was reinstated on June 8, 2016; and (B) KMH Energy Corporation's registration with the State of Virginia was cancelled on or around February 2, 2015 and reinstated October 9, 2015.

      ii. Warranty 3.3.2: (A) C&B Coal LLC (State of Virginia register number S353637) has not been dissolved; C&B's registration was cancelled for failure to pay the annual fee as of March 1, 2016; and (B) the effective date of the sale of Westchester Coal Limited Partnership was May 2, 2013 and Westchester Coal GP, Inc. was May 2, 2013.

      iii. Warranty 15.2 (Litigation and Compliance with Law): neither the Company nor any Subsidiary have any liability in respect of the judgement entered on February 11, 2014 by the US Fourth Circuit Court of Appeals against Seller, Westchester Coal LP and Cobalt Mining Corp. ordering them to pay $502,295.78 plus interest to employees, plus additional back pay that may accrue and interest, compounded daily, if the Westchester mines are reopened.

      iv. Employees: Cobalt reconfirms that neither Clinchco nor any of the Subsidiaries now have or have ever had any employees.

   b. Cobalt hereby warrants confirms and undertakes (without qualification by reference to anything Disclosed) that:

i.  None of the corporate tax returns referred to in Section 3(b) of the Closing Addendum have been filed but all taxes, fees and penalties arising out of the delinquent returns will be paid in full by the Seller other than any of the same which arise as a result of any adverse tax treatment as a result of the forgiveness of debt due to the Seller as contemplated by subparagraph (b)(x) below;

ii.  each of Clinchco and its Subsidiaries is duly organized, validly existing and in good standing in their respective jurisdictions of incorporation or formation;

iii.  Cobalt Coal LLC and Mill Creek Mining Inc. are wholly owned direct subsidiaries of Clinchco;

iv.  KMH Energy Corporation and Ken Energy Corporation are wholly owned direct subsidiaries of Cobalt Coal LLC;

v.  except as noted above, each Subsidiary has been in continuous existence since incorporation and each Subsidiary has the right, power, capacity and authority to conduct its business as conducted at the date of this Agreement;

vi.  neither Clinchco nor any of its current or former Subsidiaries has ever had a joint venture with any company or undertaking with McClay Energy Inc or WF Coal Sales Inc or any of their respective affiliates, nor has Clinchco or any of its Subsidiaries agreed to enter into a joint venture or other similar arrangement; the Seller agrees to either (at the option of GEM) release the Company and the Subsidiaries from any liability in respect of the debt of $7,596,605 shown in the accounts of the Group for the year ended 31 December 2015 ("the **Intercompany Debt**") or allow GEM to reduce the Consideration by the amount of the Intercompany Debt. The Buyer acknowledges that any adverse tax consequence incurred by the Company or the Subsidiaries as a result of the Buyer's decision to forgive the Intercompany Debt shall be the responsibility of the Buyer and Schedule 5 to the SPA is accordingly amended to reflect same.

vii.  any Encumbrance existing on, over or affecting the Shares or any of the assets of the Company or any Subsidiary granted to secure debt owed to the vendors of KMH Energy Corporation ("**the KMH Vendors**") in connection with the acquisition of KMH Energy Corporation (the "**KMH Vendor Debt**") has been released and the KMH Vendors shall not have any recourse to Clinchco or any of its Subsidiaries in relation to any such debt or pursuant to any security document executed in connection therewith;

viii.  Cobalt has procured that any UCC filings evidencing the KMH Vendor Debt have been terminated and shall provide GEM with evidence of the same;

ix.  except as otherwise provided in (vii), (viii) and (ix) above which shall be released on or prior to the Effective Date or in respect of the Cobalt Senior Debt, there is no Encumbrance on or over or affecting any of the assets of Clinchco or its Subsidiaries, nor is there any agreement, arrangement, or obligation to create or give an Encumbrance in relation to such assets;

    x.  as of the Effective Date there is no Encumbrance existing on or over or affecting the Remaining Shares, other than the charge granted in favor of Tailwind;

    xi.  since the Closing Date neither Clinchco nor any of its Subsidiaries have entered into (A) any lease for Real Property or (B) any material contract;

    xii.  Schedule 7 contains an accurate, complete up to date list of permits used by Clinchco and its Subsidiaries and these permits comprise all of the necessary or desirable permits needed for the effective operation of their respective businesses as of the date of this Agreement, noting that the permits require annual maintenance requirements and will require acreage amendments from time to time.

## 8. Further Consents

a.  Seller agrees to obtain from any other third party any consents, licenses, permits, waivers, approvals, or authorizations which are required to be obtained by the Seller, the Company or its Subsidiaries in connection with the authorization, execution and delivery of this Transaction Documents and the consummation of the transactions contemplated thereby.

b.  With respect to those consents or approvals (or effective waivers thereof) which are not obtained on or prior to the date of this Agreement:

    i.  If any Permit or license used by the Company and its Subsidiaries requires consent as a result of the transactions contemplated by the Transaction Documents as amended, Seller shall obtain such consent, approval (or an effective waiver thereof) as soon as possible but in any event not later than 30 days after the date of this Agreement.

## 9. Indemnity

a.  Seller hereby represents and warrants to the Buyer the information contained in the due diligence responses answers, in the form attached hereto as Annex D ("the Annex D Warranties").

b.  Section 5.8.4 of the SPA is amended to insert the following words immediately before the semicolon "and the Annex D Warranties".

c.  Section 5.8 of the SPA shall be amended by inserting the following new sections:

    i.  "5.8.6 Ken Energy Corporation and KMH Energy Corporation simultaneously operating under the name "KMH Energy Corporation" from June 6, 2011 and April 13, 2014;" and

    ii.  "5.88.7 the lapses in registration with the State of Virginia of Cobalt Coal LLC, KMH Energy Corporation and Mill Creek Mining Inc;".

## 10. Further Amendments

As of the Effective Date of this Agreement, the SPA is amended as follows:

a.  Section 14.1 of the SPA shall be amended to provide that notices to GEM shall be sent to the following address:

c/o McCarthy Denning, 49 Queen Victoria Street, London EC4N 4SA.

b. A new Schedule 8 shall be added to the SPA in the form attached hereto as Annex B to reflect the additional asset owned by Cobalt Coal, LLC, specifically a Parnaby Barrel Washer (and associated equipment).

c. Section 9 of Schedule 4 of the SPA is amended to add the following: "The Company has no stock (inventory) other than two large "gob" piles of coal situated on the Davis Tract. The Seller makes no representation or warranty as to the quality or quantity of coal contained therein (nor does the Seller warrant the marketability or suitability thereof)."

d. Schedule 6 of the SPA is amended to add the "DEEL Lease" as follows: "3. The Lease Agreement between KMH Energy Corporation and Roberta Deel Hammonds dated 1 June 2013 which is attached hereto as Annex C. The DEEL Lease applies to a lease for water ponds on the Mill Creek tract requiring an annual payment of $4,000".

e. Section 2.4 of Schedule 4 of the SPA is amended to add the words "except for Tailwind" after the words "without the consent of any third party".

f. Section 4.4 of Schedule 4 of the SPA is amended to add the words at the beginning of the sentence "Except for all tax returns"

g. Section 6.2 of Schedule 4 of the SPA is amended to remove the words United Kingdom.

h. Section 14.5 of Schedule 4 of the SPA is amended to add the words at the end of the sentence "except for the intercompany loan from the Seller, the balance of which is $7,596,605 as of 8 August 2016".

i. Section 18.4 of Schedule 4 of the SPA is amended by the insertion of the words "Other than coal mining and the carrying out of preparatory works for coal mining" at the beginning thereof.

j. Section 20.1 of Schedule 4 of the SPA is amended to delete the words "loss of profits".

k. Section 23.1 of Schedule 4 of the SPA is qualified to affirm that the Company currently has credit balances totaling $251,100 in support of reclamation bonds and there are no other accounts that have a cash balance exceeding $5,000.

l. Section 23.3 of Schedule 4 of the SPA is deleted in its entirety.

m. Section 23.6 of Schedule 4 of the SPA is amended to add the words at the beginning of the sentence "Except for the Permitted Encumbrance".

n. Section 24.2 of Schedule 4 of the SPA is deleted in its entirety.

o. Section 27.1 of Schedule 4 of the SPA is amended to add the words into the last sentence "and its Subsidiaries" after the words "The Company".

p. The Closing Addendum is amended as follows:
   i. The first sentence of Section 5 is deleted and replaced with the following: "Seller shall deliver to the Buyer the following documents in respect of Closing:"
   ii. The last sentence of Section 5 is revised to read "The Seller has retained the Closing Documents, including the Disclosure Bundles and has agreed to deliver those documents to Buyer within 10 days of signing this agreement. After receipt and review of the documents, the Buyer will confirm receipt of the documents required to be delivered by the Seller in relation to this Closing.

Execution Version

q.   The Payment Extension Agreement is amended as follows:

   i.   the last recital which reads as follows:

   "**AND WHEREAS** the parties agreed at Closing that the originals of the documents
   to be delivered to the Buyer by the Seller at Closing (the "**Closing Documents**"),
   including the minute book and share certificates representing the common shares
   being purchased by the Buyer, were to be held by the Seller until the Initial
   Consideration and the 8 Monthly Payments have been made by the Buyer to the
   Seller (the "**Buyer's Payment Obligations**") and the Seller confirms that it
   continues to hold those documents until the Buyer's Payment Obligations have
   been satisfied;" is deleted in its entirety.

   ii.   Section 4 is deleted in its entirety

   iii.   The signature date is amended from "Signed this 3rd day of March 2015" to
   "Signed this 3rd day of March 2016".

## 11. Undertakings and Warranties

a.   Each party will do or cause to be done, or refrain from doing, all acts necessary to give
effect to this Agreement.

b.   Each party represents and warrants that: (i) it has the full power and authority to enter into
and to perform this Agreement, and (ii) the execution, delivery, and performance hereof
does not and will not violate any law or regulation or authorization, ruling, consent,
judgment, order or decree of any court or government agency.

## 12. Deliverables

On or before the Effective Date:

a.   Notwithstanding anything to the contrary in any of the Transaction Documents, Cobalt
shall deliver to GEM the originals of the documents required to be delivered to the
Buyer under the SPA including, the minute book, share certificate (the Buyer hereby
acknowledging that it has already been provided with the original Clinchco share
certificate representing the 90 common shares being purchased by the Buyer under the
SPA), the share register (which reflects the transfer of the share certificate to the Buyer,
and each item set out in Schedule 2, Section 1 (Items for delivery by Cobalt) of the SPA
as updated and supplemented by Section 5 of the Closing Addendum.

b.   Cobalt shall procure that the board meetings referred to in Section 2 of Schedule 2 is
held and such other actions are taken, noting that it shall be the responsibility of the
Buyer's board representatives to effect the change of registered office of Clinchco and
its subsidiaries.

c.   GEM shall also deliver to Seller the item set out in Section 3 of Schedule 2 (Items for
delivery by Buyer).

## 13. Reaffirmation of Rights of Set Off

a.   The Buyer confirms as follows:

Execution Version

- that its representatives have had the opportunity to be onsite at the leases and have reviewed the Transaction Documents and amendments thereto; and
- that its representatives have already commenced field operations; and
- that its representatives have already concluded due diligence

and consequently the Buyer hereby reaffirms Article 7d of the Closing Addendum of the SPA that the Buyer shall not be entitled to set off any amounts claimed under the Transaction Documents against any sums to be paid by the Buyer which have been defined as the Initial Consideration and the 8 Monthly Payments in the Closing Addendum (for sake of clarity, the total sum of $850,000) but rather, that if any claims are made by the Buyer, they may only be claimed against future payments of either $2.5MM or $5MM as the case may be. The Seller acknowledges that the Buyer may set off the sum of $50,000 from the Consideration (but not the first $850,000 of the Consideration) being the sum that it has to agreed to pay to Mike Clisso to settle certain debts owed to him by the Seller or its shareholders.

### 14. Governing Law

a. This Agreement shall be governed by and interpreted in accordance with the laws of the Commonwealth of Virginia, USA. Non-contractual obligations, if any, arising out of or in connection with this agreement (including its formation) shall be governed by the laws of Commonwealth of Virginia, USA.

b. The parties agree to submit to the non-exclusive jurisdiction of the courts of the Commonwealth of Virginia, USA in relation to any claim.

### 15. General Qualifications

a. The Buyer acknowledges that the assets to be delivered pursuant to the SPA did not include ownership of C&B Coal LLC ("**C&B Coal**") or its assets. The assets of C&B Coal were the ACIN Lease which was voluntarily surrendered by C&B Coal. The 43-101 report prepared by Engineering Services included quantities of coal that were contained in lands covered by the ACIN Lease and consequently the volumes referred to in the Engineering Services report may require revision if the ACIN lease is not re-acquired by GEM.

b. For sake of clarity, the Seller reaffirms that it does not warrant the accuracy of the Engineering Services report.

c. The Buyer acknowledges that the "Boyd Lease" pertaining to a portion of the access road into the Mill Creek tract has been voluntarily surrendered in favor of constructing the access road on lands that are already under lease at the Mill Creek tract so as to avoid making annual rental payments and wheelage royalty payments. Seller confirms that all royalty payments that were due and payable under the "Boyd Lease" prior to its voluntary surrender have been paid in full and there are no further liabilities for the Company or its subsidiaries under this lease.

Execution Version

d.  While the qualifications herein already acknowledge that the UMWA has obtained a judgement ("**the UMWA Judgement**") against Seller, Cobalt Coal Mining Inc and Westchester Coal LP, certain of the warranties contained in Schedule 4 of the SPA may require qualification in respect of the UMWA Judgement.  Consequently, any Warranty contained in Schedule 4 that requires qualification as result of the UMWA Judgement is hereby qualified.

e.  Notwithstanding any other provision in the Transaction Documents or this Agreement, the Seller reaffirms its responsibility for any obligations pursuant to the UMWA Judgement and hereby reaffirms the Indemnity granted to the Buyer is respect of any liabilities arising from the UMWA Judgement:  specifically that the Seller indemnifies the Buyer from any liability arising from the UMWA Judgement.

This agreement signed on the ____ day of _____, 2016.

EXECUTED AND DELIVERED as a DEED by COBALT COAL LTD
acting by a director in the presence of:                                    )
                                                                             )
                                                                             )  Director
Signature of witness:...................................................

Print name: ................................................................

Address:.....................................................................
............................................................................

Occupation: ...............................................................

EXECUTED AND DELIVERED as a DEED by US CARBON
RESOLUTIONS CORPORATION acting by a director in the presence   )
of:                                                                          )
                                                                             )  Director
Signature of witness:..............................................

Print name: ...... Joe Molcbert ...............................

Address:.... 16a Creshense lane, High Street

...... Welterby, LS22 6LT .............................

Occupation: .......... VP ...............................................

Execution Version

EXECUTED AND DELIVERED as a DEED by TAILWIND CAPITAL
PARTNERS, INC. acting by a director in the presence of:

Signature of witness: ......................................................

Print name: ......................................................

Address: ......................................................

......................................................

Occupation: ......................................................

}
}
} Director

EXECUTED AND DELIVERED as a DEED by G.E.M. HOLDINGS U.S.
CORPORATION acting by a director in the presence of:

Signature of witness: .......... *A. R. Bigg* ..........

Print name: .......... *Alan R Biggs* ..........

Address: .......... *Burton Heir Maidstone Rd* ..........

.......... *Maidstone   ME6 4LL* ..........

Occupation: ......................................................

}
}
} Director

EXECUTED AND DELIVERED as a DEED by AL KROONTJE in the
presence of:

Signature of witness: ......................................................

Print name: ......................................................

Address: ......................................................

......................................................

Occupation: ......................................................

}
}
} Al Kroontje

Execution Version

Annex A

Transaction Documents

Execution Version

Annex B

Schedule 8 to the SPA

Description of Parnaby Barrel Washer owned by Cobalt Coal, LLC

One (1) Parnaby Barrel Wash Plant 6' x 36' with the following components and accessories:

-trunnion frame & drive, elevation frames & gantry

-6' x 16' AC Dewater screen, mounting frames & springs

-2 x 380mm cyclones

-sieve bends

-main frame with 2 sumps & pumps & motors

-1 fresh water pump

1 hi-volume hi-head 3 stages pump (no motor)

-1 CMI EB 36" coal dryer & 1 CMI VC 48" coal dryer

-Parnaby operations & flow control manuals (color coded)

- One(1) Parkson Belt Press of 1.5 meter (1hp motor missing)

- One (1) Reverse trommel dewater screen

- Steps, catwalks & hand rails for Parnaby Wash Plant

- Six (6) Conveyors of various sizes & lengths to accommodate process

- One (1) 8' x 8' hopper with plate feeder

- One (1) Control panel cabinet with stop/start buttons

Execution Version

Annex C

The Deal Lease

THIS LEASE AGREEMENT BETWEEN KMH ENERGY CORPORATION AND ROBERTA DEEL HAMMONDS GIVES KMH ENERY CORPORATION THE RIGHT TO USE THE DEEL PROPERTY SITUATED ON MILL CREEK IN DICKENSON COUNTY BEING PART OF KMH ENERGY CORPORATION'S PERMIT 1100822. KMH ENERGY CORPORATION AGREES TO PAY ROBERTA DEEL HAMMONDS THE SUM OF FOUR THOUSAND DOLLARS ($4,000.00) PER YEAR FOR USE OF SAID PROPERTY.

THIS LEASE AGREEMENT IS ENTERED INTO THE 1ST DAY OF JUNE 2013 FOR A TWO YEAR PERIOD THROUGH THE 1ST DAY OF JUNE 2015 AND INCLUDES AN OPTION TO RENEW THIS LEASE FOR AN ADDITIONAL TWO (2) YEARS BEGINNING ON THE 1ST DAY OF JUNE 2015 CONTINGENT UPON ALL PAYMENTS DUE BEING CURRENT.


KENNETH D STANLEY
KMH ENERGY CORPORATION


ROBERTA DEEL HAMMONDS


STATE OF
COUNTY OF

Acknowledged and sworn to before me by Kenneth D. Stanley on this ____30th____ day of May 2013.

My commission Expires    8-31-13
Notary Reg.   175216

NOTARY PUBLIC

STATE OF Virginia
COUNTY OF Dickenson

Acknowledged and sworn to before me by Roberta Deel Hammonds on this    31st    day of May 2013.

My commission expires   10-31-16
Notary Reg.  237772

NOTARY PUBLIC

LEASHA NEWSOME
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES 10-31-2016

THIS LEASE AGREEMENT BETWEEN KMH ENERGY CORPORATION AND ROBERTA DEEL HAMMONDS
GIVES KMH ENERY CORPORATION THE RIGHT TO USE THE DEEL PROPERTY SITUATED ON MILL CREEK
IN DICKENSON COUNTY BEING PART OF KMH ENERGY CORPORATION'S PERMIT 1100822, KMH
ENERGY CORPORATION AGREES TO PAY ROBERTA DEEL REYNOLDS THE SUM OF FOUR THOUSAND
DOLLARS ($4,000.00) PER YEAR FOR USE OF SAID PROPERTY.

THIS LEASE AGREEMENT IS ENTERED INTO THE 1ST DAY OF JUNE 2015 FOR A TWO YEAR PERIOD
THROUGH THE 1ST DAY OF JUNE 2017 AND INCLUDES AN OPTION TO RENEW THIS LEASE FOR AN
ADDITIONAL TWO (2) YEARS BEGINNING ON THE 1ST DAY OF JUNE 2017 CONTINGENT UPON
ALL PAYMENTS DUE BEING CURRENT.

KENNETH D STANLEY
KMH ENERGY CORPORATION

ROBERTA DEEL HAMMONDS

STATE OF Virginia
COUNTY OF Wise

Acknowledged and sworn to before me by Kenneth D. Stanley on this 1L day of June 2015.

My commission Expires 8-31-17
Notary Reg. 175216

NOTARY PUBLIC

STATE OF Virginia
COUNTY OF Dickenson

Acknowledged and sworn to before me by Roberta Deel Reynolds on this 19th day of June 2015.

My commission expires 10-31-16
Notary Reg. 237771

NOTARY PUBLIC

LINDA MONROE
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES 10-31-2016

THIS LEASE AGREEMENT BETWEEN KMH ENERGY CORPORATION AND ROBERTA DEEL HAMMONDS GIVES KMH ENERY CORPORATION THE RIGHT TO USE THE DEEL PROPERTY SITUATED ON MILL CREEK IN DICKENSON COUNTY BEING PART OF KMH ENERGY CORPORATION'S PERMIT 1100822. KMH ENERGY CORPORATION AGREES TO PAY ROBERTA DEEL HAMMONDS THE SUM OF FOUR THOUSAND DOLLARS ($4,000.00) PER YEAR FOR USE OF SAID PROPERTY.

THIS LEASE AGREEMENT IS ENTERED INTO THE 1ST DAY OF JUNE 2011 FOR A TWO YEAR PERIOD THROUGH THE 1ST DAY OF JUNE 2013 AND INCLUDES AN OPTION TO RENEW THIS LEASE FOR AN ADDITIONAL TWO (2) YEARS BEGINNING ON THE 1ST DAY OF JUNE 2013 CONTINGENT UPON ALL PAYMENTS DUE BEING CURRENT.

KENNETH D STANLEY
KMH ENERGY CORPORATION

ROBERTA DEEL HAMMONDS

STATE OF Virginia
COUNTY OF Dickenson

Acknowledged and sworn to before me by Kenneth D. Stanley on this         1st         day of June 2011.

My commission Expires  10-31-12
Notary Reg.  117594

NOTARY PUBLIC

STATE OF Virginia
COUNTY OF Dickenson

Acknowledged and sworn to before me by Roberta Deel Hammonds on this         1st         day of June 2011.

My commission expires  10-31-12
Notary Reg.  117594

NOTARY PUBLIC

Execution Version

Annex D



**Summary**

- On 11 February 2014 the US Fourth Circuit Court of Appeal entered a judgment against CCLTD, Westchester Coal LP and Cobalt Mining Corp ordering them to pay $502,295.78 plus interest to employees, plus additional back pay that may accrue and interest, compounded daily, if the Westchester mines are reopened.  No information regarding this judgment was included in workshare. This claim is also of particular note because the NLRB made the argument that Cobalt Mining Corp, CCLTD and Westchester LP shared premises, management and formed a single employer due to their activities conducted at the Westchester Mines.  Confirm whether this is a liability arising from Clinchco's ownership of Westchester Coal LP (see below)

- No  this is not a liability of Clinchco

- Ken Energy and KMH shared the same name (KMH) for more than two years.  Many agreements may have been entered into during this period  The KMH Vendor Debt is secured   Will these security interests be released?

- The Security interests will be released.

- KMH ownership to be confirmed, some documents suggest that shares of KMH may have been issued in connection with the merger of Energy Enterprise of Norton with and into KMH

- Clinchco Met Coal Inc. owns 100% of the shares of KMH Energy Inc

- According to the VADOC Mill Creek has been fee delinquent since 1 April 2016  Instructions should be made to pay the fee

- Corrected on July 19, 2016.

- A number of potential liabilities arising out the Westchester mine closure have been identified.  We will need to confirm whether the Clinchco Companies have any additional exposure to Westchester related liabilities

- The Clinchco Companies are not liable for any of the Westchester mine issues.

*Outstanding Secured Debt*

1) Confirm the current amount of the Tailwind debt
   Approximately $2.3 MM

2) What will happen with the Kroontje debenture? Will the debt be repaid? Will the security granted to Kroontje be released in connection with the Clinchco Acquisition?

Execution Version

Kroontje, a secured creditor pursuant to the Kroontje Debenture, will be repaid via payments made to the Seller pursuant to the Transaction Documents. Kroontje will grant a discharge specific to USCR and G.E.M in respect of the Kroontje Debenture.

3) What amount is still owed to the KMH Vendors and on what terms?
There are no amounts still owed to the KMH Vendors.
This debt appears to be secured and subordinated to the Tailwind debt with UCCs on file in VA in favour of the KMH Vendors.
All security registrations will be discharged.

### Structure Issues

1) Ownership and corporate histories of each of the Clinchco Subsidiaries needs to be confirmed (including whether each subsidiary was formed originally by CCLTD/Clinchco or whether it was acquired from a third party).
The minute books are contained in the "brown briefcase" and will be delivered at the subsequent closing contemplated by the Novation Agreement being negotiated in August 2016.

2) KMH
    a) Were shares of Clinchco issued to the KMH Vendors as consideration or were shares of CCLTD issued? [I think it was probably Cobalt Coal Ltd].
    There were no shares of either Clinchco or CCLTD issued to the KMH Vendors. The KMH Vendors are not shareholders of either Clinchco, CCLTD or and of the Subsidiaries.
    b) Has all outstanding cash consideration been paid in connection with the KMH acquisition? What is the current amount of the KMH Vendor promissory note?
    Yes, all cash consideration payable to the KMH Vendors has been fully paid such that the amount of the KMH Vendor Promissory Note is nil.
    c) Shortly before the KMH acquisition, Energy Enterprises of Norton ("Energy Enterprises") merged into KMH with KMH being the survivor. According the Agreement and Plan of Merger shares of KMH were issued to the vendors of Energy Enterprises. Are the Energy Enterprises vendors still shareholders of KMH? KMH assumed all debts and liabilities of Energy Enterprises. However, there is no documentation in workshare regarding Energy Enterprises other than some minutes and an agreement and plan of merger. Energy Enterprises vendors are not still shareholders of KMH.
    d) According to VADOC records, KMH's registration was cancelled around 2 February 2015 and reinstated 9 October 2015.
    e) Ken Energy Corporation (f/k/a KMH Energy)
    The VADOC website shows two entries for KMH Energy with different company numbers 06990956 and 07381199, which seems to suggest that KMH Energy Corporation was the old name of Ken Energy Corporation. From 6/6/11 to 13/4/14 Ken Energy Corporation was known and operated as KMH Energy Corporation.

3) Mill Creek
    a) This company is shown as fee delinquent on the VADOC website. Corrected on July 19, 2016.
    b) Was Mill Creek acquired or was this company formed by Clinchco in 2013? If acquired, when? Please provide acquisition documents.
    It was formed by Clinchco in anticipation of being the operating entity upon the commencement of mining operations on the Mill Creek tract.
    c) What does this company do? A structure chart provided in the workshare lists this company as an 'Employer and approved contract miner'.

Execution Version

Yes, it was set up as an 'Employer' and 'Approved Contract Miner' in order to commence mining operations. As of the date hereof, it does not, nor has it ever had, any employees.

4) Former subsidiaries

a) Are the only former subsidiaries of Clinchco or its subsidiaries: C&B, Westchester Coal LP and Westchester Coal GP? If not please provide names, state of incorporation and date sold of any additional former subsidiaries.

Yes, these were the only former subsidiaries of Clinchco (or its subsidiaries).

b) Currently C&B is shown as existing and active on the VADOC website, however we understand it was supposed to be dissolved? Please explain.

C&B was struck for not filing its annual returns and not paying annual fees. No other action has been taken in relation to dissolution. Please note that C&B held the ACIN Lease which has been relinquished.

While C&B was not part of the sale to USCR/ GEM US, we understand that the Clinchco buyer, would be indemnified against liabilities arising from its ownership of C&B arising within two years of the closing.

Yes.

Does Clinchco or CCLLC have any liability as shareholder/parent of C&B?

No

c) What happened to C&B's mineral lease and wheelage agreements entered into in connection the Virginia properties acquisition? Terminated. Kroontje understands from discussions in Wise on July 26, 2016 that Mosocki is in the process or reacquiring.

d) Provide details of the sale of Westchester Coal GP and Westchester Coal LP, including date of sale and a copy of the agreement. Agreements to be provided.

e) Do any of the Clinchco Companies have any past or current joint ventures? No.

f) Are there any claims and other liabilities relating to dissolved or sold subsidiaries, former joint ventures, successors etc? No.

g) Were any indemnities given by Clinchco and its subsidiaries on the sale of any assets or subsidiaries? No.

*Litigation*

1) Litigation disclosed for purposes of the Clinchco SPA (Certificate of CCL to Sterling dated 27 Jan 2013)

a) Michael Rose v Cobalt Coal Co regarding Westchester Lease (Nov 14, 2012, case number #12c-00017, McDowell County West Virginia) regarding payment of royalties on Westchester lease. There is no further information regarding Rose v Cobalt available from non-subscriber services. This case was heard and Cobalt was successful. There was no liability to Cobalt and the case was terminated.

b) Ronald Dwayne Collins v Cobalt Coal LLC, Verne Bray, R. Jacob Steele is a contact dispute regarding a payment of promissory note for C&B Coal (civil action, US District Court, Western District of Virginia, 13 January, 2013, case number 2:2013cv00004). According to publicly available records, the plaintiff demanded a jury trial but it is not clear whether the trial has happened already or what the outcome was. There has been no trial that I am aware of and this is a contractual dispute between Ron Collins and his 2 former partners Verne Bray and Jacob Steele that does not pertain to Cobalt LLC. I believe this action has been dormant for over 3 years.

2) Information regarding possible litigation, claims and other proceedings that have not been included in workshare or is information obtained through public records searches

Execution Version

a) Encoal Energy, LLC, and Gopher Land Services, Inc. v. Westchester Coal, LP, Cobalt Coal Corp Holdings, Inc., Cobalt Coal Corp. Mining, Inc. (filed August 15, 2012 as case number 1:2012cv04368 in the West Virginia Southern District Court). This breach of contract suit names Clinchco, Cobalt Mining Corp and Westchester Coal LP as defendants. I was not able to obtain any other information but an article about the suit indicated the disputed amount was approximately $100,000.

b) Integrity Coal Sales, Inc. v C & B Coal, LLC, et al., (Case No. 2:13CV00043 filed in the Western District of Virginia). The plaintiff, Integrity Coal Sales, Inc., sued to recover advance payments in the amount of $98,572.96 for the purchase of coal that it paid to defendant C & B. It asserts that C&B's parent company, codefendant CCLLC, is also liable for a portion of the payments. According to court documents, CCLLC assumed the debts of C&B. The last information that I have been able to locate is that plaintiff's motion for summary judgment was denied in 14 Feb 2014 and the case was terminated 14 May 2014 but the opinion and order were not available publicly. The amounts were repaid to Integrity Coal Sales and the case was terminated. There is no further liability in relation to this former action.

c) What is the status of each of these claims? See above.

d) Are there any other claims threatened or pending against the Clinchco or its subsidiaries? Not that I am aware of.

*Labor Relations/Employees*

1) No information regarding labour relations or employees has been provided in workshare.

2) Google searches pulled up references to the following labour matters.
   a) United Mine Workers of America ("UMWA") v McClay Energy Inc ("McClay"). UMWA filed a claim with the NLRB against McClay, as a successor to and/or a joint venture partner with Clinchco, its subsidiaries, and WF Coal Sales, Inc. as a joint venture partner of McClay Energy in respect of the Westchester mines. The claim was based on the failure to negotiate in good faith with the union (October 2015). According to the motion for default judgment and complaint (Case Number: 09-CA-168166, filed on January 22, 2016), employees were laid off, the mine in Hensley West Virginia was closed, employee were not paid on time (or at all) and when the production recommenced, the employees were not called back.
      i) The file available online is not complete, and in order to get the information, a FOIA request would need to be made. But based on the case docket it appears that at least one of the parties has been allowed to withdraw from the case, however, it is not clear which party. A motion for default judgment due to failure of respondent McClay not to file an answer to the complaint. The Court ordered McClay to show cause why motion for default judgment should not be granted on May 13, 2016.

      ii) What is the relationship current or past with McClay Energy? WF Coal Sales Inc., the owner of the Westchester mine and leases (acquired from Westchester Coal Limited Partnership) entered into a contract mining agreement with McClay Energy to conduct operations at the Westchester mine. McClay Energy is not known to us and none of the Cobalt Ltd/Clinchco entities has ever had any business dealings, including joint ventures, with McClay Energy. McClay energy is at arms-length to Clinchco, Cobalt and its management or representatives.

   b) There are two NLRB claims naming WF Coal Sales Inc. as a successor to CCLTD and its subsidiaries. The case numbers are
      i) Case Number: 09-CA-157523, Date Filed: 08/06/2015; current status: open. Allegations regarding 8(a)(5) Shutdown or Relocate (e.g. First National

Execution Version

> Maint.).Subcontract Work. Very little information was available on this case without making a FOIA request.
>
> ii) Case Number: 09-CA-155942, Date Filed: 07/13/2015, Status: Closed on 09/28/2015. This case was dismissed and the dismissal was not appealed.
>
> iii) What is the relationship current or past with WF Coal Sales Inc.? WF Coal Sales Inc. initially entered into a contract mining agreement to operate the Westchester mine and subsequently acquired the Westchester mine and leases from Cobalt Ltd. WF Coal Sales Inc. has always been at arm's length to Cobalt Ltd., Westchester and to Cobalt/Westchester management or representatives.

c) NLRB claim involving Westchester Coal LP and Cobalt Mining Corp
Cobalt Coal Ltd., Westchester Coal, L.P., and Cobalt Coal Corp. Mining Inc., A Single Employer No. 16-1052, NLRB v. Cobalt Coal LTD.  (09-CA-112146  Date Filed. 08/27/2013).  According to court documents, this claim arose out of the Westchester mine closure. The documents assert that Cobalt stopped mining at Westchester on Nov 7 2012, laying off its employees. Eight days later, the NLRB certified the UMWA as the collective bargaining representative for production and maintenance employees at Westchester. On 29 May 2013 Cobalt contracted with W F  Coal Sales Inc. to reopen the mine but failed to recall 29 employees, without having given proper notice or union an opportunity to negotiate.

The US Fourth Circuit Court of Appeal entered a judgment on Feb 11, 2014 against CCLTD, Westchester Coal LP and Cobalt Mining Corp ordering them to pay $502,295.78 plus interest to employees, plus additional back pay that may accrue and interest, compounded daily, if Westchester mines reopens.

Liabilities arising from Clinchco's ownership of Westchester Coal LP should be covered by the indemnity. The relationships between respondents should be confirmed because this case asserts that these companies are a single employer sharing same premises/management/employees. Yes.

It is not clear what portion of the judgment amount would be attributable to Clinchco's ownership of Westchester Coal LP for purposes of the indemnity and what is attributable to CCLTD. None of the judgement amount would be attributable to Clinchco (or its subsidiaries) as Westchester Coal Limited Partnership and Cobalt Coal Mining Ltd. were owned by WF Coal Sales Inc. during the relevant period.

We need an update on the status of this case, whether this is a final determination or if it is possible to appeal? Confirm how this claims will be dealt with under the indemnity provisions.

*Employees*

1) Does Clinchco or any of its subsidiaries currently have any employees (full time/part time/regular employees) mine workers/production/maintenance)?  No

2) Are there any other claims (existing or threatened) against Clinchco or any of its subsidiaries relating to former employees, employee disputes or other labor relations matters in connection with the closure of any mine, sale or dissolution of any subsidiary or otherwise? No.

3) Does Clinchco or any of its subsidiaries have any pending or threatened employee claims? If so please provide details and give a view of the company's exposure on these claims? Are they covered by indemnities or insurance? No

Execution Version

4) What kind of insurance, workers compensation or otherwise, do the Clinchco Companies have in place? Please provide details of claims over the last 5 years. Liability policy in place. No claims over the last 5 years.

*Documentation Requests*

1) Please provide complete KMH acquisition and closing document binders, including all officer's certificates and closing deliveries (2012), debt documents, security agreements and subordination agreements. They will be provided.

2) Please provide C&B acquisition and closing document binders, including all officer's certificates and closing deliveries (2012), debt documents and related subordination agreements etc. Not relevant.

3) Please provide C&B dissolution documents including minutes authorizing it. Dissolution has not been completed and is not relevant.

4) Please explain the history of Clinchco's relationship with Westchester Coal LP and Westchester Coal GP and circumstances for the sale of these companies. My understanding is that these companies have been sold but at least one claim involving a group company and Westchester is open. See discussions earlier in this document.

5) Please provide any documentation under which Clinchco or its current or former subsidiaries assumed any debts or indemnified any other party. None exist.

6) CCCHI 2013 Security Package
   CCCHI Security Agreement dated 13 Jan 2013 refers to Schedule A, which sets out real estate that it part of the collateral package. Schedule A is not attached. Please provide complete copy of the agreement. To be provided.